UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11597-RGS

EVERYSCAPE. INC.

v.

ADOBE SYSTEMS INC.

MEMORANDUM AND ORDER ON
ADOBE SYSTEMS INC.'S MOTION TO DISMISS AND
EVERYSCAPE, INC.'S MOTION FOR SUMMARY JUDGMENT

October 7, 2013

STEARNS, D.J.

In this intellectual property dispute, plaintiff EveryScape, Inc. (EveryScape), alleges that defendant Adobe Systems Inc. (Adobe), infringes United States Patents Nos. 7, 327,374 (the '374 patent) and 7,593,022 (the '022 patent).[1] On January 28, 2013, the last scheduled day of fact discovery, Adobe filed a Motion for Leave to File its Third Amended Answer and Counterclaims. Adobe sought leave to include allegations that the EveryScape patents-in-suit improperly omit a co-inventor, Dr. Julie Dorsey.[2] Adobe

---

[1] Adobe, by way of counterclaim, alleges that EveryScape infringes United States Patents Nos. 6,411,742 (the '742 patent) and 7,095,905 (the '905 patent). The '742 and '905 patents are not at issue in the motions presently before the court.

[2] Adobe originally sought to add counterclaims for correction of ownership and inequitable conduct and the affirmative defenses of

claimed that it had only lately unearthed "smoking gun" evidence that Dr. Dorsey had conceived critical aspects of the claimed invention that distinguished it from the prior art. The court allowed the amendment, noting that "Adobe's [belated] discovery of Dr. Dorsey, while not a model of efficiency, was not intentionally dilatory." Order of Feb. 26, 2013.[3] Although the court considered EveryScape's objection that the proposed amendment would be futile because Dr. Dorsey had previously released any and all claims to the intellectual property in dispute, it held that the issue of a release was too factually bound to be decided on the then existing record.

The issue is now again before the court, stylized as a "Motion for Summary Judgment that EveryScape Has Standing to Pursue its Infringement Claims." Also pending is Adobe's counter "Motion to Dismiss for Lack of Standing." A hearing on the dueling motions was held on August 27, 2013.

## BACKGROUND

The dispute dates from Dr. Dorsey's days as a professor at the

---

unenforceability and lack of standing. In its reply to EveryScape's Opposition to the Motion to Leave to File, however, Adobe abandoned its claim for correction of ownership.

[3] The court also denied a subsequent "Motion to Preclude Adobe Systems Inc. from Introducing or Relying on Testimony of Dr. Julie Dorsey," which related to EveryScape's objection to Adobe's course of conduct involving the unmasking of Dr. Dorsey's identity. Order of Aug. 20, 2013.

Massachusetts Institute of Technology (MIT).  In addition to her teaching and research duties, Dr. Dorsey served as faculty advisor to Byong Mok Oh, then a PhD candidate in the field of homography.[4]  Dr. Dorsey assisted Dr. Oh, Dr. Frédo Durand (a post-doctoral researcher), and a third student in preparing a paper entitled "Image-Based Modeling and Photo Editing" (the Modeling Paper) for publication in early 2001.  The Modeling Paper revealed a method of clone brushing that utilized depth information to perform three-dimensional operations based on a two-dimensional image.  During discovery in this case, Adobe obtained a draft of a second academic research paper entitled "Structure Preserving Clone Brushing" (the Cloning Paper) that described the homography-based clone brush claimed in the patents at issue.[5]  The extant drafts of the Cloning Paper bear various dates in the fall of 2001, some two years before the filing of the provisional application to which the patents-in-suit claim priority.  The paper names as authors not only the inventors named on the patents-in-suit – Dr. Oh and Dr. Durand – but also

---

[4] Oh received his PhD in 2002.

[5] Both the '374 patent and the '022 patent, which issued from a continuation application, are entitled "Structure-Preserving Clone Brush." The application from which the patents originate was filed on June 23, 2003, and also claims priority to Provisional Application No. 60/466,628, dated April 30, 2003.

Dr. Dorsey.

Following receipt of the Cloning Paper, Adobe served a subpoena on Dr. Dorsey and obtained in response a copy of a page from her lab notebook dated September 10, 2001. The page contains text and figures that appear more or less verbatim in the specification of the asserted patents. In an affidavit, Dr. Dorsey explains that she met with Dr. Durand and Dr. Oh on September 10, 2001, to discuss the possibility of developing a clone-brushing tool that did not require the user to provide depth information for the two-dimensional image. She states that during the meeting, she realized this could be accomplished by using a homography. She claims that she sketched out her idea while explaining the concept to Dr. Durand and Dr. Oh and subsequently drafted an outline that developed into the Cloning Paper. Adobe speculates that a disagreement over the financing of a start-up company to take commercial advantage of the discovery may have motivated a "calculated decision" by Dr. Durand and Dr. Oh to omit Dr. Dorsey as a named inventor on the April 30, 2003 provisional application. Dr. Dorsey for her part claims to have learned of the April 30, 2003 provisional application only after the advent of this case.

Based on what it describes as "clear and convincing evidence" that Dr. Dorsey is an unnamed co-inventor of the perspective clone brush, Adobe

moved to amend its Answer and Counterclaims and then to dismiss. Relying on the fundamental principle that a co-owner acting independently lacks standing to sue for patent infringement, Adobe argues that this court is without subject matter jurisdiction because EveryScape does not own the exclusive rights in the patents-in-suit. Moreover, Adobe contends that EveryScape has no realistic means of perfecting standing because on March 27, 2013, Dr. Dorsey assigned her rights in the patents-in-suit to Adobe in exchange for $300,000.

    Not surprisingly, EveryScape's opposition paints a much different picture of inventorship. Dr. Oh states in a affidavit that as his graduate studies progressed, Dr. Dorsey became increasingly unavailable to him for advice and collaboration. He instead began working with Dr. Durand. It was during a whiteboard session with Dr. Durand that Dr. Oh claims that he conceived the idea of homography-based clone brushing. According to Dr. Oh, Dr. Dorsey was not involved in any of the research on this or any other aspect of the claimed invention. She had copies of the outline and drafts of the Cloning Paper in her files only because they were given to her by Dr. Oh for review, and she was listed as a co-author only because it was the convention at MIT for students to give credit to their doctoral advisor when publishing the results of their research. Dr. Durand, for his part, corroborates Dr. Oh's claim that Dr.

Dorsey did not contribute to the creation of the claimed inventions.

Alternatively, EveryScape contends that Dr. Dorsey and Mok3 (EveryScape's predecessor in name), previously settled the issue of Dr. Dorsey's potential claims of an interest in the company's intellectual property. Dr. Oh formed Mok3 in 2003, after unsuccessful negotiations with Dr. Dorsey over its creation. After she was contacted by potential investors conducting due diligence into Mok3's requests for financing, Dr. Dorsey demanded compensation from Mok3 for her contributions to the clone brush invention while at MIT. While Mok3's primary investor characterized Dr. Dorsey's demand as "extortion," he told Mok3 that he would not go forward with the investment unless the claim was resolved. Mok3 gave Dr. Dorsey 804 shares of its stock, then worth more than $128,000, in exchange for her assignment and release of any and all claims to Mok3's intellectual property. According to EveryScape, the rights that Dr. Dorsey purported to assign to Adobe are the very same rights that she surrendered to EveryScape in the December 11, 2003 Stock Purchase Agreement. There was, in other words, nothing for Dr. Dorsey to assign to Adobe in 2013.

## DISCUSSION

It is a bedrock principle of patent law that "[a]bsent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack

standing." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 (Fed. Cir. 2008), quoting *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-1265 (Fed. Cir. 2007); *accord Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). Therefore, the dispositive question before the court is whether EveryScape holds complete legal title to the patents-in-suit.

Although "the patent right initially vests in the inventor[,] [the inventor] may then, barring any restrictions to the contrary, transfer that right to another, and so forth." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). "[I]nventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." *Id.* In other words, "[q]uestions of patent ownership are distinct from questions of inventorship." *Ethicon, Inc.*, 135 F.3d at 1465, citing *Beech Aircraft Corp.*, 990 F.2d at 1248.

The court has previously expressed doubt that the transactional language of the 2003 Stock Purchase Agreement could be fairly read as a complete assignment of Dr. Dorsey's putative rights to the perspective clone

brush technology. *See* Dkt. # 217.[6] EveryScape, however, took a belt-and-suspenders approach in its dealings with Dr. Dorsey. The Agreement also incorporated a broad release provision, which provides that:

> the undersigned Purchaser does hereby remise, release and forever discharge the Company and each of the present and former stockholders, directors, officers, employees, agents, affiliates and representatives of the foregoing and their respective successors and assigns (each, a "*Released Party*") of and from any and all commitments, covenants, agreements, indebtedness, suits, demands, obligations and liabilities, contingent or otherwise, of every kind and nature, whether known or unknown, and causes of action both at law and in equity (collectively, the "*Claims*") relating to the undersigned's relationship with the Company (including, without limitation, Claims for stock, stock options, or any other equity ownership or profits interest in the Company or related rights, or any other form of compensation), which such undersigned Purchaser and/or his or her heirs, executors, administrators or assigns ever had, now has or, to the extent arising from or in connection with any act , omission or state of facts taken or existing on or prior to the effective date of this Agreement, may have after the effective date of this Agreement, against any Released Party, whether asserted, unasserted, absolute, contingent, known or unknown.

2003 Stock Purchase Agreement § 2.4. [7]

---

[6] EveryScape's counter-argument that Adobe's failure to assert a claim or defense under either of the two statutory provisions that authorize a district court to make a finding as to inventorship – namely, invalidity under 35 U.S.C. § 102(f), or correction of ownership under 35 U.S.C. § 256 – is fatal to its standing defense is moot given the court's ultimate determination that Dr. Dorsey released any claim to correct inventorship.

[7] Dr. Dorsey's 2013 Agreement with Adobe specifically acknowledges the continuing force and effect of the 2003 Stock Purchase Agreement.

The plain language of this release operates to bar any claims Dr. Dorsey or her assigns could make against EveryScape for correction of ownership. It is beyond debate that general releases of this nature are enforceable under Massachusetts law. *See Eck v. Godbout*, 444 Mass. 724, 728-730 (2005); *see also Sharon v. City of Newton*, 437 Mass. 99, 105 (2002) ("Massachusetts law favors the enforcement of releases."). Therefore, all that Adobe acquired from Dr. Dorsey was what she had to give, that is, nothing.[8]

## ORDER

For the foregoing reasons, EveryScape's Motion for Summary Judgment is <u>ALLOWED</u> on the issue of standing. Adobe's Motion to Dismiss is <u>DENIED</u>. Expert discovery is to be completed within sixty (60) days of the date of this

---

[8] Adobe's primary argument as to why the release does not apply (that neither the Section 256 claim nor the facts giving rise to the claim came into existence until long after the release was executed) is defeated by the plain language of the release itself wherein Dr. Dorsey surrendered all of her intellectual property rights in the clone brush technology "whether asserted, unasserted, absolute, contingent, known or unknown." Adobe's remaining argument that "a release by Dr. Dorsey does not and could not waive any of Adobe's rights, including its right to challenge EveryScape's standing to sue . . . .", Adobe's Opp'n at 17, is true enough, but is completely beside the point. The issue is not whether Adobe has the *right* to challenge Everyscape's standing, but whether it has any *basis* for doing so.

9

order.  Dispositive motions are due no later than thirty (30) days thereafter. A reply brief from each side not to exceed fifteen (15) pages will be accepted within fourteen (14) days of the expiration of the dispositive motion deadline.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE