UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11597-RGS

EVERYSCAPE, INC.

v.

ADOBE SYSTEMS INC.

MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT AND PARTIAL SUMMARY JUDGMENT

July 3, 2014

STEARNS, J.

Before the court are plaintiff EveryScape, Inc.'s motion for summary judgment of infringement (Dkt. #243), and defendant Adobe Systems, Inc.'s motion for summary judgment of invalidity (Dkt. #236), both relating to United States Patent Nos. 7,327,374 (the '374 patent) and 7,593,022 (the '022 patent). These motions involve the "Clone Brushing Claims" of the '374 and '022 patents.

BACKGROUND

A clone brush, also known as a clone stamp, is a photo-editing tool used to remove undesirable segments of an image. In 2001, Adobe marketed and sold Photoshop software with a standard clone brush feature. On June 23, 2002, EveryScape's predecessor, Mok3, Inc., filed U.S. Patent

Application No. 10/601,842 ('842 Patent Appl.), entitled "Structure Preserving Clone Brush."  In January of 2005, Mok3 released a new product – "Perspective Clone Brush" (PCB) software – as a plug-in tool adaptable to Photoshop.  According to EveryScape, the PCB software — disclosed in the '842 Patent Appl., and eventually issued as the '374 and '022 patents — improved on the traditional clone brush by solving the problem of "perspective foreshortening."

In February of 2005, after favorable reviews of the PCB plug-in began to appear in technology-related weblogs, Byong Mok Oh sent an email to Michael Kaplan at Adobe, describing the Mok3 plug-in and providing a link to the Mok3 website.[1]  *See* EveryScape's SOF, Ex. I (Dkt. #299-1) at 2.  Under the heading. "Forward of technology related to Photoshop," Kaplan copied the email from Oh to Adobe coworkers Marc Pawliger, Mark Hamburg, and Greg Gilley.  *See id.*  In April of 2005, Adobe launched

---

[1] Adobe appears to have been aware of the PCB software as early as January.  An Adobe document with notes from a January 2005 "East Coast Press Tour" contains a section titled "*InfoTrends: Ed Lee & Kristy Holch; Questions and Comments*." Exhibit H to Pl.'s SOF, Dkt. #299.  This section includes notes such as: "10) 'You just put a little construction company out of business' – Ed Lee met with them last week, start-up company in Boston for perspective drawing and cloning," *id.* at 12, and "Ed Lee just met with a little start-up company. . . Mok3 is the name of the company – Photoshop plug in available now . . . Yonald Cherry – CEO, $129 yonakd@mok3.com." *Id.* at 13.

Photoshop CS2 featuring a "revolutionary new tool," which Adobe called "Vanishing Point." Since 2005, Adobe has manufactured and sold copies of the accused product in the United States.

According to the sworn declarations of the Senior Corporation Counsel of Corel (a third-party software company based in Ottawa, Canada), and Erik Johnson, a former Corel employee who developed the forerunner of the Painter 7 clone brush, Painter 7 was released in the United States at least as early as July 23, 2001. According to Adobe, Painter 7's clone brush, called xPerspective 4P Cloner, anticipated the PCB software in all material respects.[2]

### The EveryScape Patents

The '374 and '022 patents are both entitled "Structure-Preserving Clone Brush," and list Byong Mok Oh and Fredo Durand as the co-inventors. The '374 patent was issued on February 5, 2008, and is comprised of 19 claims. The '022 patent was issued on September 22,

---

[2] While Corel maintained its source code as a proprietary secret and did not seek to patent the xPerspective technology, I agree with Adobe that the fact that the source code was never published is irrelevant. *See Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1323 (Fed. Cir. 2002).

2009, and consists of 32 claims. Claim 1 of the '374 patent is representative.[3]

1. A clone-brushing method of painting in a 2D image, the method comprising:

specifying a first world plane in the 2D image;

providing a source position and a destination position in the 2D image;

identifying a destination region in the 2D image relative to the destination position;

determining a source region in the 2D image corresponding to the destination region in the 2D image including:

defining a transformation that maps the destination position relative to the first world plane to the source position relative to the first world plane using a homography defined by the first world plane, and identifying pixels in the source region of the 2D image corresponding to pixels in the destination region of the 2D image using the transformation and the homography;

transforming 2D image information of the source region relative to the first world plane to 2D image information of the destination region; and

painting in the 2D image by copying the transformed 2D image information to the destination region.

_____

[3] The '374 and '022 patents share the same specification.

Following a claim construction hearing on November 5, 2012, the court construed the following terms as they appear in both the '374 and '022 patents.

*Homography*: Construed as "a 2D projective transformation that determines a linear mapping between an image and a world plane." Dkt. #102, at 13.[4]

*Source Position*: Construed as "a position different from the destination position, relative to which image information is copied." *Id.* at 18.[5]

## DISCUSSION

Patent infringement analysis involves two steps: (1) the threshold construction of the meaning and scope of an asserted claim; followed by (2) a determination of whether the accused product infringes the properly construed claim. Where the parties do not dispute any relevant facts

---

[4] The court fashioned this definition in recognition of the fact that an accurate construction of "homography" must incorporate two essential characteristics: while a homography *is* "a 2D projective transformation," what a homography *does* is "determine a linear 2D to 2D mapping between the image and world planes." *Id.* at 11.

[5] The most salient dispute over the meaning of "source position" at the claim construction hearing was whether the definition of source position should include the phrase "selected by a user," as EveryScape advocated.

regarding the accused product, but disagree over which of two possible meanings of a patent claim applies, the question of literal infringement collapses into one of claim construction and is thus amenable to summary judgment. *Athletic Alts., Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed. Cir. 1996).

A patent and each of its claims is presumed to be valid. 35 U.S.C. § 282. Because of this presumption, "'a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise.'" *TriMed, Inc. v. Stryker Corp.,* 608 F.3d 1333, 1340 (Fed. Cir. 2010), quoting *SRAM Corp. v. Ad–II Eng'g, Inc.,* 465 F.3d 1351, 1357 (Fed. Cir. 2006). As the court must "construe the facts in the light most favorable to the non-movant," *Mazzari v. Rogan,* 323 F.3d 1000, 1005 (Fed. Cir. 2003), Adobe bears the burden of persuasion on the purported invalidity of the '374 and '022 patents.

## EveryScape's Infringement Claim

EveryScape's motion for summary judgment on infringement is limited to the Clone Brushing Claims (also called the "non-color-correction" claims). *See* Dkt. #295 at 10 ("directed to the general method of clone brushing with perspective correction"). According to EveryScape, these

claims include: (1) method claims (1 and 2 of the '374 patent and 24 and 25 of the '022 patent); (2) system claims (17 and 18 of the '374 patent); and (3) computer program product claims (1, 2, 12, and 13 of the '022 patent).

EveryScape relies principally on the expert report of Maja Eleanor Bystrom, PhD, to support its claims of infringement. *See* Ex. P to Pl.'s Mem. According to Bystrom, Adobe's Vanishing Point includes "every element of the system claims asserted by EveryScape." Bystrom Decl. at 5. She also asserts that the "Adobe [product] perform[s] every element of the method claims asserted by EveryScape." *Id.* Bystrom's analysis is based on her review of, among other things, the source code produced by Adobe, her experiments with versions of Adobe Photoshop, and her gleanings from Adobe's Photoshop instructional manuals. *Id.* at 7.

Bystrom states that:

Users of Adobe's Accused Products perform the steps of claim 1 when they use at least the close stamp tool of Vanishing Point in its intended manner.[6] With Vanishing Point, a user specifies a plane in the image with the CreatePlane tool by selecting four corner points (e.g., with the specific instruction to "click the four corners of a perspective plane)." The user then specifies a

_____

[6] Bystrom notes that in Adobe Photoshop, two icons (Marquee and Stamp) allow the editing of an image by copying from one portion of an image to another. Bystrom's analysis, however, is focused on the stamp tool.

source point . . . and a destination point. . . . [T]he user drags the curser to identify a destination area where pixels are to be copied into. A corresponding sources area, from which pixels are to be copied, is determined relative to a homography (the mapping between the image plane and the plane defined by the user) and a translation (defined by the relationship between the source point and the destination point). The pixels from the source area are transformed, such as through interpolation or use of "healing" options, and copied to the destination area.

*Id.* at 26-27.

Adobe, in its opposition, essentially concedes Bystrom's conclusions regarding the mimicking of the Clone Brushing Claims, and argues only that claims are invalid as anticipated by Corel Painter 7.[7] Thus, the court will grant EveryScape's motion for summary judgment of infringement, and proceed to the issue of invalidity.

## Adobe's Invalidity Arguments

Adobe argues that the Clone Brushing Claims of the EveryScape patents were anticipated by the "xPerspective 4P Cloner" tool in Corel

---

[7] As Dr. Hany Farid (Adobe's expert) testified in his deposition: "I did not do a detailed analysis [of Bystrom's conclusions] because I believe the patent to be invalid." Farid Dep. Tr. (Dkt. #299-17) at 37:19-23. Thus, "I don't believe there was anything in my report where I do a direct comparison between the claims and the accused product." *Id.* at 321:9-10.

Painter 7, rendering those claims invalid.[8]  While Corel was unable to locate the source code for the English version of Painter 7, it made available the code for Corel Procreate Painter 7A software, which was contemporaneously released in France, and included the xPerspective 4P Cloner Feature.

Because there are material disputes of fact as to whether Corel Painter 7 anticipated the Clone Brushing Claims, specifically, whether the xPerspective 4P Cloner performs a "homography" in the manner construed by the court,[9] the question of the invalidity of the Clone Brushing Claims cannot be decided as a matter of law on summary judgment.

---

[8] In addition to the Painter 7 instruction manual (whether "cryptic" or not), Adobe points to a 2001 "lunch talk" given by the inventors of the EveryScape Patents at MIT, as well as an unpublished draft article by the inventors, in support of its argument that EveryScape's patents were anticipated by prior art.  The relative weight of these sources is to be determined by the jury with proper instructions.

[9] EveryScape argues that Painter 7 is not actually "prior art" because Corel did not publish or patent its source code (*see* fn. 2, *supra*), and a material dispute of fact exists over whether Corel Painter 7 was sold for the requisite time period required for it to qualify as prior art in the United States.  Dr. Farid , for his part, states that the defined transformation in the Painter 7 French source code that he examined is "a homography" that operates in the exact manner as EveryScape's Perspective Clone Brush.  Adobe states that "EveryScape also does not contest that the eight points selected by a user define a quadrilateral-to-quadrilateral mapping, *i.e.*, a homography." Def.'s Opp'n at 1.  It will be remembered that a central dispute at the claim construction stage was whether a homography could be

ORDER

For the foregoing reasons, the court <u>ALLOWS</u> EveryScape's motion for summary judgment as to Adobe's infringement of the Clone Brushing Claims of the '374 and '022 patents. The court will <u>DENY</u> Adobe's motion for summary judgment of invalidity and reserve the issue for trial.[10]

SO ORDERED.

---

construed simply as a "2D projective transformation" or, in this case, "a quadrilateral-to-quadrilateral mapping." The court ruled that an essential feature of "homography" is that it defines a linear mapping between two planes. *See* Dkt. #102 at 11-13 ("As Figure 4-5 of the provisional application makes clear, a "homography" is a transformation from an image plane to a world plane from the perspective of a camera. . . . A point on the image plane is transformed to a point in the world plane by projecting – drawing an imaginary straight line from the camera through the image plane at the point, to the world plane . . . ."). EveryScape alleges that Corel Painter 7 does not perform "a homography" as construed by this court to include a "transformation that determines a linear mapping between an image and a world plane," and thus lacks key claim elements upon which the EveryScape patents were allowed. The acknowledgement by EveryScape that Corel Painter 7 uses "quadrilateral to quadrilateral mapping" thus does not necessarily amount to a legally conclusive concession (as Adobe contends) that the 4P Cloner tool uses a homography as the term is construed.

[10] The court is aware that the assumption that patent validity issues are to be tried to a jury is not a matter of universal consensus. S*ee* Mark A. Lemley, *Why Do Juries Decide if Patents Are Valid (August 5, 2013), Stanford Public Law Working Paper No. 2306152*, available at http://ssrn.com/abstract=2306152. But, absent guidance to the contrary from the Supreme Court or the Federal Circuit, the court will (as do the parties) proceed on the assumption that the jury right is implicated by this dispute.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE