UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11597-RGS

EVERYSCAPE, INC.

v.

ADOBE SYSTEMS, INC.

MEMORANDUM AND ORDER
ON ADOBE SYSTEMS, INC.'S MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

July 16, 2014

STEARNS, J.

In this motion, defendant Adobe Systems, Inc., seeks summary judgment of noninfringement as to the "Color Correction Claims" of United States Patent Nos. 7,327,374 (the '374 patent) and 7,593,022 (the '022 patent). The motion is a companion to two prior cross-motions, in which Adobe sought summary judgment of invalidity and EveryScape summary judgment of infringement with respect to the so-called "Clone Brushing Claims." On July 3, 2014, the court allowed EveryScape's motion (which was essentially unopposed by Adobe), and denied Adobe's motion for a declaration of invalidity. The court reasoned that Adobe had failed to produce sufficient proof to establish by clear and convincing evidence that

EveryScape's clone brushing technique was anticipated by Corel's Painter 7 xPersepctive 4PCloner.

In its response to this motion, EveryScape abandons any claim of literal infringement. Rather, EveryScape argues that Adobe's Vanishing Point tool infringes under the "doctrine of equivalents" because, as EveryScape explains, "[Adobe's] Vanishing Point [Clone Stamp] corrects for color differences by comparing color sample regions and computing a color difference – instead of a color ratio – and applying that color correction to image information of the source region, the differences between the two operations are insubstantial." Pl.'s Opp. (Dkt. #303) at 4. Adobe, relying on the sub-doctrine of ensnarement, maintains that Vanishing Point does not infringe the asserted claims.[1]

## BACKGROUND

The '374 and '022 patents are both entitled "Structure-Preserving Clone Brush," and list Byong Mok Oh and Fredo Durand as the co-inventors. The '374 patent was issued on February 5, 2008, and has 19 claims. The '022 patent was issued on September 22, 2009, and has 32 claims. The "Color Correction Claims" (or "Asserted Claims") collectively

---

[1] Adobe also argues, albeit in passing, that EveryScape's equivalence assertion vitiates the "ratio" element of the claims, and that no reasonable jury could find equivalence.

consist of claims 4, 5, and 6 of the '374 patent, and claims 4, 5, 6, 15, 16, 17, 27, 28, and 29 of the '022 patent. These claims depend from independent claim 1 of the '374 patent, and from independent claims 1, 12, and 24 of the '022 patent, which are directed to the clone brush. Each of the Asserted Claims includes the two limitations, "computing a color ratio between the first color sample region and the second color sample region," and "applying the color ratio to the 2D image information of the source region." *See* '374 Pat., col. 11:60-67 (claim no. 4); '022 Pat., col. 11:50-59 (claim no. 4), col. 12:34-41 (claim no. 15), col. 14:18-25 (claim no. 27).[2]

Vanishing Point was developed as a plug-in for Adobe Photoshop by co-creators Ralf Berger and Steven Troppoli, while they were employees of

---

[2] Dependent claim 4 of the '374 patent is representative of the term "color ratio" in the Color Correction Claims. It reads:

4. The method of claim 1 further comprising:

Providing a first color sample region for the source region; Providing a second sample color region for the destination region; and computing a color ratio between the first color sample region and the second color sample region, wherein transforming 2D image information further comprises applying the color ratio to the 2D image information of the source region.

'374 Pat., col. 11:60-67.

a company called Utopia Imaging. Adobe does not dispute the fact that Vanishing Point performs the first two steps of the Asserted Claims, namely taking a first sample from the source position and a second sample from the destination position. The issue (as framed by EveryScape) is whether Vanishing Point meets the color ratio limitation under the doctrine of equivalents.

## DISCUSSION

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### ***The Doctrine of Equivalents***

The doctrine of equivalents is intended to prevent "fraud on a patent." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950). A patentee may claim the protection of the doctrine of equivalents if it can prove that the differences between the critical elements of its patent and those of the accused product are "insubstantial." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 24 (1997). Proof entails an element-by-element comparison to determine "whether [each critical] element of an accused product performs substantially the same function in

4

substantially the same way to obtain the same result as an element of the patented invention." *Am. Cacor, Inc. v. Am. Honda Motor Co.,* 651 F.3d 1318, 1338 (Fed. Cir. 2011); *see also Charles Mach. Works, Inc. v. Vermeer Mfg. Co.,* 723 F.3d 1376, 1380 (Fed. Cir. 2013). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson,* 520 U.S. at 29.

Infringement under the doctrine of equivalents is ordinarily a question of fact. *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1251 (Fed. Cir. 2000). "Thus summary judgment may be granted [only] when no material fact is in dispute, or when no reasonable trier of fact could find facts whereby the nonmoving party could prevail, even when all justifiable factual inferences are drawn in favor of the nonmovant." *Canton Bio-Med. v. Integrated Liner Techs., Inc.,* 216 F.3d 1367, 1369 (Fed. Cir. 2000).

***Ensnarement***

A patentee cannot seek a range of equivalents that would "ensnare" the prior art. *See Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 684 (Fed. Cir. 1990).

> [A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims. The doctrine of equivalents exists to prevent a fraud on a patent, *Graver Tank*[,] 339 U.S. [at] 608[], *not* to give a patentee something which he could not lawfully have obtained from the PTO had he tried. Thus, since prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.

*Id.* (emphasis in original). Ensnarement is an issue of law for the court.

> Although *Warner-Jenkinson* did not explicitly mention "ensnarement" as one of the "various legal limitations on the application of the doctrine of equivalents" to be decided by a court, we have consistently treated it as such. We have called ensnarement and prosecution history estoppel, collectively, "two policy oriented limitations" on the doctrine of equivalents, both of which are "applied as questions of law." *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870 (Fed. Cir. 1985), *overruled in part on other grounds, Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed. Cir. 1998) (en banc). Ensnarement, like prosecution history estoppel, limits the scope of equivalency that a patentee is allowed to assert. This limitation is imposed even if a jury has found equivalence as to each claim element. *See Wilson Sporting Goods,* 904 F.2d at 683 ("Even if this [function-way-result] test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art."); *id.* at 687 (deciding ensnarement "as a matter of law" after jury found infringement). The ensnarement inquiry is separate and distinct from the jury's element-by-element equivalence analysis, and it has no bearing on the validity of the actual claims. *See id.* at 685 ("Wilson's claims will remain valid whether or not Wilson persuades us that it is entitled to the range of equivalents sought here.").

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322-24 (Fed. Cir. 2009).

> To determine whether prior art restricts the range of equivalents,
>
> > it may be helpful to conceptualize the limitation on the scope of equivalents by visualizing a *hypothetical* patent claim, sufficient in scope to *literally* cover the accused product. The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art. If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents. If the hypothetical claim could have been allowed, then *prior art* is not a bar to infringement under the doctrine of equivalents.

*Wilson*, 904 F.2d at 684 (emphasis in original).

For purposes of this motion, the hypothetical claim encompassing Vanishing Point would include both the clone brush and the color correction elements because the Color Correction Claims are dependent on the independent clone brush claims. Thus, for the hypothetical claim to ensnare prior art, the prior art must anticipate or render obvious the combination of the clone brush and color correction elements. As the court has rejected Adobe's summary judgment argument that the clone brush claims were anticipated by Painter 7, *see* Dkt. #376, the court cannot say as a matter of law that the clone brush elements of the hypothetical claims would, in fact, ensnare the prior art.[3]

---

[3] EveryScape bears the burden of proof to show that its proposed equivalents do not ensnare prior art. *See Wilson,* 904 F.3d at 85. This

7

Moreover, EveryScape disputes Adobe's assertion "that the color correction aspects of the accused Vanishing Point Clone Stamp Tool work identically to Adobe's own prior art healing brush." Def.'s Br. at 5. In its "summary of relevant facts," Adobe offers a wealth of information on the

---

burden is distinct, however, from the "clear and convincing evidence" standard by which an accused infringer must prove invalidity, and instead requires the patentee to prove lack of ensnarement by a "preponderance of the evidence." This burden flows from the patentee's ultimate burden to establish infringement under the doctrine of equivalents, as explained by Judge Cacheris:

> [W]here a defendant is accused of infringing a patent *under the doctrine of equivalents,* it must merely "come forward" with alleged prior art, at which point the plaintiff bears the ultimate burden to prove lack of ensnarement *by a preponderance of the evidence. See Streamfeeder, LLC v. Sure-Feed Sys., Inc.,* 175 F.3d at 983-984 (Fed. Cir. 1999); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,* 204 F.3d 1360, 1364-1365 (Fed. Cir. 2000) (defendant alleging ensnarement "must come forward with evidence that the hypothetical claim reads on the prior art"); *Spansion, Inc. v. Int'l Trade Comm'n,* 629 F.3d 1331, 1349 (Fed. Cir. 2010) ("[T]he plaintiff must establish by a preponderance of the evidence that one or more of [the] claims of the patent read on the accused device … under the doctrine of equivalents."). In short, while a defendant in an invalidity case must prove invalidity by clear and convincing evidence, a defendant in an ensnarement case must merely make a *prima facie* showing of prior art before the plaintiff must show lack of ensnarement by a preponderance of the evidence.

*Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 451-452 (E.D. Va. 2011). The quirk in this case stems from the fact that it is Adobe that has moved for summary judgment. Thus the court must draw all inferences favorable to EveryScape as the non-moving party, even though EveryScape ultimately bears the burden to prove non-ensnarement.

architecture and deployment of the healing brush in Photoshop 7. However, with respect to the issue of substantial similarity between the Photoshop healing brush and Vanishing Point, Adobe rests its case on the largely unadorned opinion of Dr. Hany Farid, its expert, that "there is no difference in the 'healing' aspects of the Clone Stamp tool in Vanishing Point and Adobe's prior art." *Id.* at 7. Dr. Farid's declaration (Exhibit 3 to Adobe's motion) is notable for its lack of technical analysis (such as citations to source code), and its reliance on anecdotal evidence, hearsay, and personal impressions, for example: "I have used the healing mode of the Clone Stamp tool in Vanishing Point and have also inspected the source code for the same. . . . I have inspected the source code for the healing brush in Photoshop 7. . . . I have also spoken with Ralf Berger . . . who . . . relayed to me that the healing mode of the Clone Stamp tool in Vanishing Point is the same as used in the prior art Photoshop." Farid Decl. ¶ 9.

Adobe also points to the depositions of Berger and Troppoli (the creators of Vanishing Point) as evidence that "[w]hen developing the Vanishing Point 'healing' mode, the Vanishing Point developers implemented the same algorithms that were used in the prior-art Photoshop healing brush." Def.'s Br. at 7. Citing to the creators' testimony, Adobe maintains that the Photoshop 7 healing brush corrected color "based

9

on a complex set of higher order partial differential equations modeled on the physics of heat diffusion," and that "the Vanishing Point developers implemented the same algorithms that were used in the prior-art Photoshop healing brush." Def.'s Br. at 5 & 7.

The actual deposition testimony, however, is far less definitive on this point. *See* Berger Dep. at 234:12-236:14 (stating that he developed Vanishing Point's healing brush *without knowledge* of how Adobe Photoshop's healing brush operated and that he still does not know whether his Vanishing Point healing brush uses the same operations as the prior-art Adobe Photoshop to achieve the resulting functionality); *see also* Troppoli Dep. at 77:3-17 (stating that he and Berger did not have access to the Adobe Photoshop code or the Adobe patents when developing Vanishing Point, and that they merely "attempted to simulate a similar result for a – for a slightly different purpose").[4]

Relying on the report of its expert, Dr. Maja Bystrom, EveryScape contends that the Vanishing Point color difference computation "does not

---

[4] Adobe acknowledges in its reply brief that Dr. Farid cannot identify the segments of the Vanishing Point source code that perform the allegedly identical operation of the healing brush in Photoshop 7. *See* Def.'s Rep. at 9, n.6. Moreover, "there is no allegation that the source code is 'identical,' nor is that even a possibility, since the Vanishing Point developers didn't have the Photoshop source code when they built Vanishing Point." *Id.*

involve [as Dr. Farid asserts] 'complex higher order differential equations,' whether they are intended to simulate heat diffusion or not." Pl.'s Opp. at 7. Dr. Bystrom relates her own analysis of the Vanishing Point source code (attached as Exhibit BB to EveryScape's opposition). *See* Bystrom Rep. (Dkt. #307-1). Dr. Bystrom concludes that the Vanishing Point color difference depends on the same Gaussian weighted averages identified in the patents-in-suit to compute the "color ratio" element. *See, e.g.*, '374 Pat., col. 12:1-3 ("The method of claim 4, wherein the color ratio is computed using Gaussian weighted averages of the first and second sample color regions."). EveryScape also notes Berger's answers in responding to deposition questions about the healing brush:

> Q: You described a healing brush that was included with Vanishing Point, correct?
> 
> . . .
> 
> Q: Can you describe briefly how that worked?
> 
> A: So I had to reverse-engineer that thing. The way it works is you – if you're copying something from here to here – let me see if I can get this straight. You start by not using any of this area that you're actually copying. You use the surrounding area. And then using a Gaussian process, I would basically extrapolate the edge into the middle, and then I would create a luminance difference bitmap, essentially."
> 
> Q: The difference between the source and the destination?
> 
> A: Right.

Berger Dep. at 250:12-251:4. From this testimony, and her source code analysis, Dr. Bystrom concluded that "[f]ollowing the averaging process, the color difference value . . . between the source and destination is calculated." Bystrom Rep. at 76-77. "The function '[adjusts] the value of the source based on the difference between the source and destination luminance mattes' . . . and . . . thereby appl[ies] the calculated color difference to the source region." *Id.* at 77.[5]

At the end of the day, one is left with a dispute between the experts over the material facts that inform the function-way-result inquiry. Adobe's response, that "there is no battle of the experts," Def.'s Rep. at 6, because Dr. Farid's conclusion was not "disproven" by Dr. Bystrom, misapprehends its burden of proof on summary judgment. *See, e.g.,*

---

[5] Troppoli, the Vanishing Point co-developer (and Adobe's Rule 30(b)(6) designee), more or less agreed with Bystrom when deposed on this point.

> Q: But . . . for a particular pixel, say, in the destination area, what delta is applied to that pixel to get this new value?
>
> A: So my belief is that it's . . . the pixel value at the location in the luma matte for the source and the luma matte in the destination. That difference in luma is then applied to the pixel that is painted in by converting to YUV and then applying that luma delta.

Troppoli Dep. at 107:15-22.

*Charles Mach. Works,* 723 F.3d at 1380 ("For purposes of summary judgment, we must accept [the non-movant's] expert's factual assertions as true."). Adobe has not presented enough evidence to warrant judgment as a matter of law that "any range of equivalents" would ensnare the prior art.[6]

## SUMMARY

The validity of the clone brush claims and the issue of infringement under the doctrine of equivalents of the Color Correction Claims will be tried to a jury. If the jury returns a verdict that Vanishing Point infringes the Asserted Claims under the doctrine of equivalents, the court will decide, as a matter of law, whether such an application of those claims ensnares prior art. *See DePuy Spine*, 567 F.3d at 1324 ("Accordingly, we hold that ensnarement . . . is to be determined by the court . . . on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict.").

## ORDER

---

[6] EveryScape's evidence suggesting that Vanishing Point performs the same function and achieves the same color correction result using the same way – through the use of a Gaussian process – rebuts Adobe's alternative arguments that EveryScape's proposed equivalence vitiates the "ratio" element of the claims, or that no jury could find infringement under the doctrine of equivalents.

13

For the foregoing reasons, Adobe's motion for summary judgment of noninfringement is <u>DENIED</u>.  The clerk will set the case for trial following the court's entry of its decision on the remaining issues of willfulness and indirect infringement.

        SO ORDERED.

        /s/ Richard G. Stearns
        UNITED STATES DISTRICT JUDGE